**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VINCENZO MAZZONI,

        Plaintiff,

v.                                 No. Civ. 07-432 LH/ACT

JASON MORALES, DENNIS TAFOYA,
ELIZABETH THOMSON, CAMERON JOHNSON,
SHAWN O'CONNELL, KELLY SINCLAIR,
JONATHAN SATHER, and KEVIN MORANT,
in their individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On May 24, 2010, Plaintiff filed a Motion for Judgment as a Matter of Law or, in the Alternative, to Alter or Amend the Judgment and for a New Trial (Doc. 87). The Court, having reviewed the motion, briefs, evidence, relevant law, and otherwise being fully advised, finds that Plaintiff's motion should be denied.

**I.      BACKGROUND**

On June 9, 2009, this Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' motion for summary judgment and denying Plaintiff's motion for partial summary judgment. (*See* Mem. Op. and Order (Doc. 54) at 29-30.) As relevant to the motion at issue here, the Court in its Memorandum Opinion and Order allowed Plaintiff's claims for his unlawful continued seizure and for excessive force to proceed against Defendants Cameron Johnson, Elizabeth Thomson, Jason Morales, and Kelly Sinclair.[1] The Court, however, granted Defendants'

---

[1]The Court also permitted similar state tort law claims to go forward, but Plaintiff subsequently voluntarily dismissed those claims at the pretrial conference. (*See* Clerk's Minutes (Doc. 73) at 1.)

motion for summary judgment as to Plaintiff's initial removal from the apartment.  The Court concluded that Defendant Johnson, who cuffed Plaintiff as he came out of the apartment, was entitled to qualified immunity based on the fellow-officer rule that allows officers to rely on information furnished by other law enforcement officials, so long as that reliance is objectively reasonable.  The Court also determined that there was no evidence that any of the other named defendants were personally involved in Plaintiff's initial removal from the apartment, so the Court dismissed Plaintiff's unlawful seizure claim based on his removal from the apartment against all named Defendants.

This Court held a jury trial in this case on April 26-27, 2010.  After the close of evidence, the jury returned a verdict in favor of each Defendant on all counts.  On April 29, 2010, this Court entered Final Judgment in favor of each Defendant on all Plaintiff's claims.  (*See* Final J. (Doc. 86).)

On May 24, 2010, Plaintiff filed his Motion for Judgment as a Matter of Law or, in the Alternative, to Alter or Amend the Judgment and for a New Trial (Doc. 87).  Plaintiff argues that the Court erred in its initial Memorandum Opinion and Order granting Defendants summary judgment on Plaintiff's Fourth Amendment unlawful seizure claim arising out of his removal from the apartment and that the Court must reconsider that ruling.  Plaintiff further argues that the Court's erroneous ruling limiting his claims against Defendants to the events post-removal from the apartment infected the jury instructions.  Plaintiff contends that Jury Instruction No. 10 was erroneous because it allowed the jury to find that Plaintiff's continued seizure was justified based on something less than the probable cause standard.  Additionally, Plaintiff argues that the instructions, in not including an instruction informing the jury on the legality of the apartment seizure, encouraged the jury to make the improper inference that Defendants had a legal justification for the entire duration of the seizure.  Plaintiff contends these errors tainted the jury's determination

2

on both the unlawful continued seizure and excessive force claims.

## II.    DISCUSSION

### A.    Rule 50 Judgment as a Matter of Law

Rule 50 permits a court, on a renewed motion for judgment as a matter of law, to order a new trial or direct entry of judgment as a matter of law if the court determines that the verdict was not supported by the evidence.  *See* Fed. R. Civ. P. 50(b).  "A party is entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party."  *Burrell v. Armijo*, 603 F.3d 825, 832 (10th Cir. 2010).

This Court ruled before trial that each of the named Defendants could not be held liable for Plaintiff's initial seizure from the apartment.  Thus, the question for the jury was whether each Defendant acted reasonably with regard to Plaintiff's continued seizure.

The evidence at trial, viewed in the light most favorable to Defendants, showed that Defendant Johnson initially seized Plaintiff based on his superior's orders and that he cuffed him for safety reasons, because Plaintiff emerged from an apartment that the incident commander had informed him might contain the attempted murder suspect, Harry McCarty.  (*See* Trial Tr. (Doc. 89) 64:24-65:1; 65:23-25;  81:9-15; 90:15-19; 91:17-92:1.)  At that time, Defendant Johnson did not know whether Plaintiff was a witness to a crime, a victim of a crime, an innocent bystander, or a suspect. (*See id.* 91:20-92:1.)  Defendant Johnson immediately took Plaintiff to his superiors in the command post where Detective Morales interviewed him.  (*See id.* 64:24-65:1; 65:23-25; 91:11-92:1.)  During that interview, Plaintiff relayed information to Detective Morales that was relevant to the investigation.  (*See id.* 114:14-115:12; 126:14-127:19.)  After the approximately 15-minute interview, Detective Morales immediately went to the commanders in charge of the scene to report

3

that Plaintiff should not be further detained.  (*See id.* 116:12-15; 117:7-11; 128:3-11.)  Commander Geier then ordered another field officer to release Plaintiff.  (*See* Trial Tr. (Doc. 90) 220:16-221:18.) Defendant Johnson, who had the necessary tool to remove the flex cuffs, released Plaintiff from the cuffs shortly thereafter.  (*See* Trial Tr. (Doc. 89) 66:21-67:3.) Defendant Johnson estimated that Plaintiff was in cuffs for approximately 15 minutes.  (*See id.*)

Defendant Johnson was not aware of all the information his superiors had regarding the investigation, and thus, his taking Plaintiff to his superiors and waiting for their order to remove Plaintiff's cuffs was reasonable based on his limited information. Defendant Morales, after briefly questioning Plaintiff, reported to the superiors in charge that Plaintiff should not be further detained. Defendant Morales acted reasonably in reporting to his superiors that Plaintiff should no longer be detained and presuming that his superiors would release Plaintiff.  Similarly, Defendant Sinclair acted reasonably in going along with Defendant Morales' decisions because Defendant Sinclair was not privy to all the facts in the case because he was busy running around assisting other officers. (*See* Trial Tr. (Doc. 90) 190:16-191:2.)  Finally, the evidence at trial supports the conclusion that Defendant Thomson did not have contact with Plaintiff until after Defendant Johnson removed his cuffs and that she objectively had no reason to believe Plaintiff was being seized such that she should have intervened to stop the continued seizure.  (*See id.* 143:11-16: 145:21-148:2; 156:12-157:5; 158:16-18; 160:17-19; 162:14-163:17.)  The evidence in Defendants' favor also demonstrates that Plaintiff was no longer seized after his cuffs were removed and that he was free to leave at that point and that he chose not to leave, but rather to stay and help Mr. Kulp.

Although Defendants, upon Plaintiff's removal from the apartment, had no reason to suspect him of any crime, the chaotic nature of the scene and the multiple officers involved contributed to the approximately 15-minute time period Plaintiff was seized in cuffs after his removal from the

apartment.  The evidence, however, supports the jury's verdict that each Defendant acted reasonably in using the chain-of-command to get Plaintiff released from the cuffs and did so in a reasonable time period.  Although Plaintiff testified to a time-frame of being seized much longer than Defendants' version, there were facts sufficient for the jury to disbelieve Plaintiff's version.  There were also facts for which the jury could find that each Defendant acted reasonably based on their respective knowledge and roles in the investigation.  The Court will not disturb the jury verdict and will deny Plaintiff's motion for judgment as a matter of law or for new trial.

**B.   Rule 59 Motion for New Trial**

**1.   This Court did not err in its summary judgment decision**

Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities."  Fed. R. Civ. P. 54(b).  This Court's Memorandum Opinion and Order filed on June 9, 2009, dismissed some claims and some parties, but the Court did not enter final judgment as to those claims and parties until the Court entered its Final Judgment on April 29, 2010, after trial of the remaining claims resulted in a judgment for Defendants.  Prior to the entry of Final Judgment, Plaintiff requested at the pretrial conference and during trial that the Court reconsider its June 9, 2009 opinion.

Although the Court had authority under Rule 54(b) to revise its ruling at those times, the Court declined each request.  When Plaintiff orally asked this Court to reconsider its summary judgment ruling, he proffered a few additional facts that he believed trial would show, but at no point did Plaintiff supplement the record with admissible evidence to support his proffer and motion to reconsider.  Plaintiff argues that he "proffered that the evidence at trial would show the identities

of the Defendants who caused or participated in the initial warrantless seizure of Plaintiff in the apartment." (Pl.'s Mot. (Doc. 87) ¶ 7.) If Plaintiff had additional evidence of personal involvement of Defendants in the initial warrantless seizure prior to trial, he could have and should have provided that evidence to the Court by affidavit, deposition, or some other admissible form to overcome the showing Defendant made on summary judgment. *See Elephant Butte Irr. Dist. of New Mexico v. U.S. Dept. of Interior*, 538 F.3d 1299, 1305 (10th Cir. 2008) ("Under Fed.R.Civ.P. 56, a party opposing a motion for summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.'") (quoting Fed. R. Civ. P. 56(e)(2)). The purpose of summary judgment is to narrow the issues at trial to only those for which a dispute of fact exists. When Defendants moved for summary judgment, Plaintiffs had to provide admissible evidence to survive summary judgment. If Plaintiff believed that additional evidence existed to support his position, but he did not yet have it, Plaintiff could have and should have used Rule 56(f) to permit him an opportunity to obtain that information. *See id.* at 1306 ("As we have made clear, 'the nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) . . . or explain why it cannot pursuant to Rule 56(f). Otherwise, the nonmovant acts, or fails to act, at its peril.'") (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998)). Plaintiff failed to make use of Rule 56(f). In the absence of *evidence* of a dispute of fact, this Court repeatedly denied Plaintiff's requests to reconsider its ruling on Defendants' motion for summary judgment.

On May 24, 2010, Plaintiff filed the instant motion, 25 days after the Court's entry of Final Judgment. Plaintiff brings this renewed motion to reconsider the Court's Memorandum Opinion and Order and motion for judgment as a matter of law and new trial under Rules 50 and 59.

Defendant argues, however, that Plaintiff's motion was untimely under Rule 59 because it was filed long after the Court's summary judgment ruling. Instead, Defendant argues that the Court should apply Rule 60(b).

Rule 59(e) requires that a motion for new trial or a motion to alter or amend a judgment be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(b) & (e) (2010). Contrary to Defendants' argument, Plaintiff's motion for new trial was timely because the "judgment" date is that of entry of the final judgment, not of the order granting partial summary judgment, which this Court did not expressly order was immediately appealable. *See* Fed. R. Civ. P. 54(a) (defining "judgment" as "a decree and any order from which an appeal lies"); *Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("'Judgment' does not, however, encompass an order dismissing fewer than all of the opposing parties or claims unless the district court directs the entry of final judgment under Rule 54(b), or expressly indicates that the order is an immediately appealable interlocutory decision under 28 U.S.C. § 1292(b)."). Consequently, the Court will consider the motion under Rule 59.

Rule 59 gives a court discretion to grant a new trial, after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Court has discretion to alter or amend its judgment under Rule 59(e) based on an intervening change in the controlling law, new evidence previously unavailable, and the need to correct a clear legal error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Accordingly, Rule 59(e) relief is appropriate only where 'the court has misapprehended the facts, a party's position, or the controlling law.'" *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *Servants of Paraclete*, 204 F.3d at 1012). A new trial may be granted if the court concludes that the claimed error

substantially and adversely affected the party's rights. *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008).

Plaintiff argues that the Court erred in its Memorandum Opinion and Order in applying incorrect law regarding the "collective knowledge" doctrine. Plaintiff contends the Court erred in concluding that Defendants could not be liable for Plaintiff's initial seizure from the apartment because the Court erroneously relied on Defendants' subjective belief that another officer had probable cause, rather than the objective view of whether probable cause actually existed. Plaintiff asserts that the Court erroneously relied on outdated dictum from the Supreme Court's opinion in *United States v. Hensley*, 469 U.S. 221, 232 (1985), which was reiterated in allegedly similarly outdated dictum in the Tenth Circuit's opinion in *Baptiste v. J.C. Penney*, 147 F.3d 1252 (10th Cir. 1998).

### a.    This Court did not err in relying on *Hensley* and *Baptiste*

In *Hensley*, the Supreme Court held that officers of one police department may constitutionally conduct an investigative detention of a suspect in reliance on a flyer issued by another police department indicating that the suspect is wanted for a felony investigation so long as the police department issuing the flyer had a reasonable suspicion that the suspect had committed the offense. *See Hensley*, 469 U.S. at 229-233. In so holding, the Supreme Court further stated: "If the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment. In such a situation, of course, the officers making the stop may have a good-faith defense to any civil suit." *Id.* at 232 (citing, among others, *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). This statement, however, was not necessary to the holding in *Hensley*, because the Supreme Court concluded that the flyer had been issued on the basis of facts supporting a reasonable suspicion that the suspect committed the offense. *See id.* at 233.

Plaintiff contends that "the case law which the *Hensley* dictum cited in support of the subjective 'good faith' defense was subsequently abrogated in *Harlow v. Fitzgerald*, 457 U.S. 800, 817-19 (1982)." (Pl.'s Mot. (Doc. 87) ¶ 24.) *Harlow* did indeed alter the qualified immunity defense of prior opinions, like *Scheuer*. *See Harlow*, 457 U.S. at 814-18. In *Harlow*, the Supreme Court eliminated the subjective aspect of the good-faith defense, making it clear that officers are shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See id.* One of the problems with Plaintiff's argument, however, is that the Supreme Court decided *Hensley* almost three years **after** the *Harlow* decision. Although the *Hensley* Court cited *Scheuer* instead of *Harlow* when referring to the good-faith defense, there is nothing to suggest the *Hensley* Court was erroneously re-invoking the outdated subjective aspect of the qualified immunity test. In fact, the *Hensley* Court, after noting the possible availability of the good-faith defense, states in the very next sentence, "It is the *objective* reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." *Hensley*, 469 U.S. at 232-33 (emphasis added). Accordingly, the *Hensley* dictum was not invoking the outdated subjective good faith defense, rather, it was referring to the objective good faith defense to civil liability for damages. This Court therefore cannot conclude that the Tenth Circuit erred in *Baptiste* in relying on *Hensley* and its progeny in holding that "a police officer who acts 'in reliance on what proves to be the flawed conclusions of a fellow officer' may nonetheless be entitled to qualified immunity as long as the officer's reliance was 'objectively reasonable.'" *Baptiste*, 147 F.3d at 1260 (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)).[2] *See also Marshall v. Columbia Lea Regional Hosp.*,

_____

[2]Plaintiff also asserts that this language in *Baptiste* is dictum because the Tenth Circuit ultimately concluded that the officer was not relying on another officer's probable-cause

345 F.3d 1157, 1180 (10th Cir. 2003) (noting that fellow officer rule set forth in *Baptiste* and like cases rests "on the theory that private parties or police officers relying on the orders or determinations of other law enforcement officials are entitled to qualified immunity because such reliance is 'objectively reasonable'").

Plaintiff argues that *Baptiste* also should not be followed because the Tenth Circuit has rejected the analogy between an officer's good-faith reliance on a warrant and an officer's good-faith reliance on information provided by fellow officers.  The Supreme Court in *Hensley*, however, rejected the significance of the distinction:

> It could be argued that police can more justifiably rely on a report that a magistrate has issued a warrant than on a report that another law enforcement agency has simply concluded that it has a reasonable suspicion sufficient to authorize an investigatory stop. We do not find this distinction significant. The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal.

*Hensley*, 469 U.S. at 232.  As the *Hensley* Court explained, "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."  *Id.* at 231 (quoting *United States v. Robinson*, 536 F.2d 1298, 1300 (1976)).  Moreover, the cases Plaintiff cites in support of his argument that the Tenth Circuit has expressly rejected this "false analogy" are inapposite.

In *United States v. Clarkson*, the Tenth Circuit declined to extend the good-faith exception

---

determination.  (Pl.'s Mot. (Doc. 87) ¶ 23.)  Plaintiff is mistaken.  The Tenth Circuit explained that the issue of whether the defendant officer relied on her fellow officer's probable cause-determination was a factual issue to be resolved at trial.  *Baptiste*, 147 F.3d at 1260.  The *Baptiste* statement that an officer may be entitled to qualified immunity for objectively reasonable reliance on a fellow officer's flawed conclusions was thus necessary to the *Baptiste* decision.

to the exclusionary rule in criminal cases, set forth in *United States v. Leon*, 468 U.S. 897 (1984), to situations where a fellow officer makes a mistake upon which another officer relies. *See United States v. Clarkson*, 551 F.3d 1196, 1204 (10th Cir. 2009). In *Clarkson*, one officer performed a search of a suspect's vehicle after his fellow officer reported that his narcotics dog alerted to the vehicle. *See id.* at 1199-1200. The dog-handling officer, however, failed to report that his dog lacked certification for narcotics detection. *Id.* at 1200. The district court held that the qualifications of the dog were irrelevant because the first officer's reliance on the dog's alert was reasonable, even if mistaken, because he did not know the dog was unreliable. *Id.* The Tenth Circuit disagreed, rejecting application of the good-faith exception under the circumstances because "the improper police conduct of conducting a search with an untrained or unreliable dog would not be effectively deterred" and would contravene the purpose of the exclusionary rule. *Id.* at 1204. The Tenth Circuit clarified that the good-faith exception to the exclusionary rule applies in situations where a neutral third party who is not engaged in law enforcement makes the mistake resulting in the Fourth Amendment violation. *Id.* at 1203. The Tenth Circuit remanded for a determination of whether the qualifications of the narcotics dog supported a finding of probable cause to search the vehicle. *See id.* at 1204-05.

There is nothing in the *Clarkson* opinion suggesting that the Tenth Circuit would dismantle the fellow officer rule in the qualified immunity context in civil cases. That the Tenth Circuit would suppress evidence based on a lack of probable cause is significantly different from concluding that both officers should be held liable for civil monetary damages for the dog-handling officer's wrong. Likewise, that evidence found within Plaintiff's apartment may have been suppressed in a criminal case does not thereby require that all officers present at the scene be civilly liable for monetary damages for his unlawful arrest.

Plaintiff also relies on *United States v. Chavez*, 534 F.3d 1338 (10th Cir. 2008). In *Chavez*, the Tenth Circuit extended the *Hensley* holding, which addressed an investigative detention, to allow the application of the collective knowledge doctrine to a situation where one officer has probable cause and instructs another officer, who only knows the conclusions of the other officer's investigation, to stop and search a vehicle pursuant to the automobile exception. *See id.* at 1346-48. The Tenth Circuit stated that dicta in *Whiteley v. Warden*, 401 U.S. 560 (1971), also supported this conclusion, but noted that the dicta "was not dispositive to the issues here because it dealt with an arrest warrant issued by a magistrate and the holding of *Whiteley* was that the underlying warrant itself was defective, thereby mandating the suppression of the evidence obtained by the second, arresting officer." *Chavez*, 534 F.3d at 1346 (citing *Whiteley*, 401 U.S. at 568-69). The Tenth Circuit went on to explain that another Tenth Circuit case supplied the missing link to permit this extension of the *Hensley* holding. *See id.* Contrary to Plaintiff's argument, the discussion of *Whiteley* did not amount to a rejection of the fellow officer rule where a warrant is not involved. The Tenth Circuit in no way undermined its prior holding in *Baptiste*.

The fundamental error in Plaintiff's argument lies in his attempt to conflate the Tenth Circuit's law on the good-faith exception to the exclusionary rule in criminal cases with its application of the fellow officer rule in the qualified immunity context in civil cases. The two are not the same. The Tenth Circuit's limitation of the good-faith exception to the exclusionary rule in a criminal case to a mistake by a neutral third-party does not constitute an express rejection of the fellow officer rule in civil cases. The purpose of the exclusionary rule is to deter police misconduct. In the civil context, the fellow officer rule helps ensure that civil liability is only imposed on the officers who are responsible for the Fourth Amendment violation. *See Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1028 (9th Cir. 2002) (explaining that circuit's holding in criminal case that

12

all officers should have known that defective warrant made search illegal was not determinative of whether a particular officer was entitled to qualified immunity because, in reviewing denial of motion to suppress in earlier criminal case, the circuit "had no occasion to address the allocation of responsibilities between leaders and the rank and file").  An officer who relies on the flawed conclusions of his fellow officer and whose reliance is objectively reasonable would not have known that a Fourth Amendment violation was occurring, and thus, imposing civil liability against that officer would not deter police misconduct.  Instead, the officer who makes the flawed conclusion is the one held responsible, a result in accordance with the policy goal of deterring police misconduct.[3]

Moreover, the purpose of the fellow officer rule in civil cases is to prevent disruption of police work, which often requires collaboration and officers relying on the observations, statements, and conclusions of their fellow officers.  *See Baptiste*, 147 F.3d at 1260.  Limiting the fellow officer rule as urged by Plaintiff would create the need for each responding officer, when no warrant is involved, to separately investigate and determine all the facts surrounding a fellow officer's reasonable suspicion or probable cause conclusions before acting in order to avoid civil liability. This severe disruption to effective law enforcement is not tenable in light of the adequate protections

_____

[3]This Court recognizes that the Supreme Court in *Malley v. Briggs*, 475 U.S. 335, 344 (1986), held that the same objective reasonableness standard applied in the context of a suppression hearing in accordance with *Leon* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.  The Supreme Court in *Malley*, however, also noted the different purposes served by and costs attendant to the exclusionary rule and a § 1983 damages action.  *See id.*  The Supreme Court, in applying the objective reasonableness standard, did not thereby subject the qualified immunity defense to all limitations of the good-faith exception to the exclusionary rule.  Indeed, in *Malley*, the Supreme Court stressed how the damages remedy in a § 1983 action "imposes a cost directly on the officer *responsible for the unreasonable request.*"  *Id.* (emphasis added) *Malley* thus does not undermine either *Hensley* or *Baptiste*.

13

for a citizen's rights in place through the joint deterrent effect of the exclusionary rule and civil liability against the officer who makes the flawed conclusion and causes the constitutional violation. *See Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) ("Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

Finally, contrary to Plaintiff's argument, this Court's conclusion does not amount to a "just following orders" defense. If an officer has reason to believe that his fellow officer's conclusion was wrong, both officers could be held liable. More importantly, the Court's ruling does not leave a plaintiff bereft of a remedy. It merely ensures that the liability is assigned against the person or persons who acted in an objectively unreasonable manner. For instance, here Plaintiff could have sued the supervising officer(s) who concluded that there was probable cause to target Apartment 133 and who ordered the apartment to be targeted. Despite knowing the identities of those officers, Plaintiff neglected to do so. This Court cannot remedy that failure by imposing liability on a subordinate officer who objectively and reasonably relied on the flawed conclusions of his superiors. *Cf. Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) ("The officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions. . . . Line officers, on the other hand, are required to do much less.") (quoting *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir.2002)).

In sum, the qualified immunity law set forth in *Baptiste* remains binding law in this Circuit. This Court did not err in applying that law to the facts of this case. *See Stearns v. Clarkson*, __ F.3d __, 2010 WL 3191511 (10th Cir. 2010).

        **b.**      **This Court did not err in holding that the named Defendants**

**were entitled to qualified immunity**

Plaintiff also argues that the Court erred in its Memorandum Opinion and Order because the record supports a "reasonable inference that one or more of the Defendants was personally involved in the actions or decisions which caused Plaintiff to be seized within the apartment without a warrant" and that none of the defendants had probable cause or exigent circumstances for the warrantless seizure. (Pl.'s Mot. (Doc. 87) ¶ 4.) As this Court held in its Memorandum Opinion and Order, to order Plaintiff out of his home at gunpoint, the officers needed probable cause and exigent circumstances. This Court did not rule in its Memorandum Opinion and Order whether or not the officers ordering Plaintiff out of the apartment had probable cause. Instead, this Court concluded that the officers Plaintiff sued were entitled to qualified immunity because, other than Defendant Johnson, none of the other named Defendants were personally involved in Plaintiff's initial seizure, nor were they supervisors in charge of SWAT's decision to order Plaintiff out of the apartment, nor did they have sufficient information to be in a position to intervene to stop the constitutional violation. As to Defendant Johnson, the Court determined that, although he placed cuffs on Plaintiff as he exited the apartment, he acted objectively reasonably based on the limited information provided to him by other officers and superiors and given the chaotic nature of the scene. (*See* Mem. Op. and Order (Doc. 54) at 13-14.) This Court thus did not need to, and indeed did not, reach the issue of whether Plaintiff's removal from the apartment was supported by probable cause and exigent circumstances, only that the named Defendants were not liable for the removal and were entitled to qualified immunity.

Plaintiff asserts that additional evidence at trial shows that each Defendant was on the scene and/or participating in radio communications with Commander Geier and other officers during the planning phases of the seizure before Plaintiff was removed from the apartment. The trial evidence,

15

however, did not establish that all the information known to Commander Geier and the other officers involved in the preliminary investigation was conveyed over the radio.  (*See* Trial Tr. (Doc. 90) 196:6-15 (describing information Commander Geier relayed over police radio as "brief").)  Nor did the trial evidence demonstrate that each Defendant heard all the information that was conveyed over the radio.  That a defendant may have testified to having been in radio communication does not establish that he or she was aware of all the information that Commander Geier and the other investigating officers had concerning the investigation or that they knew enough of the information, or lack thereof, to know objectively that there was no probable cause to target Apartment 133 such that a reasonable officer would have intervened.  (*See, e.g.*, Trial Tr. of Jason Morales (Doc. 89) 125:14-22 (describing how, when he arrived on scene, Defendant Morales went to command post immediately because he knew that was where he could get information other officers had obtained during the preliminary phase of investigation); Trial Tr. of Kelly Sinclair (Doc. 90) 190:16-191:2 (explaining that it would have been inappropriate for him to release a suspect or witness on the scene because he was not privy to all facts of the case at that point because he was busy running around assisting other officers).)  Nor is merely being present on the scene sufficient evidence to make the unreasonable leap in logic that an officer present at the scene must know all the facts discovered in the investigation sufficient to question the probable cause determination made by his or her supervising officer.  Merely being in the same area when constitutional deprivations occur is insufficient to establish personal liability.  *See Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996).  Accordingly, the trial evidence does not support Plaintiff's argument that the named Defendants participated in their supervisors' decision to order Plaintiff out of the apartment or had sufficient information to be in a position to intervene to stop the constitutional violation.  Moreover, the trial evidence also showed that, of the named Defendants, only Defendant Johnson was personally

involved in Plaintiff's initial seizure. (*See, e.g.*, Trial Tr. (Doc. 89) 136:20-24 (Defendant Morales testified that he did not know why Plaintiff was being brought out of Apartment 133 and that he was not involved in that decision-making process at all); Trial Tr. (Doc. 90) 156:12-17 (Defendant Thomson testified she neither saw nor had any idea that Plaintiff was exiting apartment when he did); *Id.* 184:23-185:4 (Defendant Sinclair testified that, when he arrived on scene, he did not see Plaintiff being taken out of the apartment).)

As to Defendant Johnson, the Court concludes that the trial evidence did not demonstrate that it erred in its pre-trial holding that Defendant Johnson was entitled to qualified immunity based on the fellow officer rule. "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997). *See also Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (citing *Rogers* with approval); *Baptiste*, 147 F.3d at 1260 (citing *Rogers* with approval). The reason for this doctrine is that police work "often requires officers to rely on the observations, statements, and conclusions of their fellow officers," so an officer who is called to the scene to assist in an arrest is not required to reevaluate his fellow officer's probable cause determination in order to protect himself from liability. *Baptiste*, 147 F.3d at 1260.

Defendant Johnson testified that he did not make any determination as to which apartments would be targeted; rather, the incident commander made that decision. (Trial Tr. (Doc. 89) 81:9-15.) Defendant Johnson testified that Lieutenant Huntsman, the incident commander at the time, told him that there were three different apartments in the apartment complex on which the police were focused. (*Id.* 59:14-60:3.) Defendant Johnson was initially at Apartment 327, but he responded to

17

Apartment 133 when he heard over the radio that there was movement at Apartment 133 and that the officers there were not ready, so he sprinted to Apartment 133 to support his fellow officers. (*See id.* 60:24-61:15; 86:6-87:4.)  The record does not show that Defendant Johnson was aware of all the information known to Commander Geier and Lieutenant Huntsman concerning the details of the investigation such that he should have known whether or not there was probable cause to target Apartment 133.  (*See id.* 91:20-92:1 ("I [Officer Johnson] didn't know whether [Mr. Mazzoni] was a witness to a crime, a victim of a crime, an innocent bystander or a suspect, so the goal was to deliver him to detectives, or detectives who understood everything that was going on, and they could determine – get information from him to hopefully capture the shooter or shooters."); 99:18-21 ("Q.  They were never suspects, were they?  A.  No, all I knew is, when they exited the apartment, I was to put them in flex cuffs, in handcuffs, and deliver them to the command posts.").) Rather, he was provided with and relying on information from his incident commander over the radio that the shooter or shooters could have fled into one or more of the three apartments.  (*Id.* 84:9-11; 103:15-25.)  Defendant Johnson did not know of the specific facts behind the conclusion to target Apartment 133.  (*See id.* 103:21-104:11, 105:10-16.)  He was merely "relying on what [he] was told from the incident commander by radio."  (*Id.* 103:21-25.)[4]  Lieutenant Huntsman ordered

---

[4]At trial, Commander Geier testified that by around 6:30 a.m., he knew that Harry McCarty, the attempted murder suspect, resided in Apartment 134.  (Trial Tr. (Doc. 90) 215:5-8.)  Denise Whitehead, Eric McCarty's girlfriend, who emerged from Apartment 134, told officers that Harry McCarty was friends and may be with Omar who lived in Apartment 133.  (*See id.* 163:18-164:6, 201:25-202:5, 215:14-216:8.)  Commander Geier had vehicle descriptions of Omar's vehicles, which were in the parking lot, so he assumed that Omar and possibly Harry could be in Apartment 133.  (*Id.* 215:17-20.)  This Court need not determine whether Commander Geier had probable cause to order the seizure of the persons in Apartment 133. What is relevant is that Defendant Johnson was not aware of all the information his superiors were relying upon, but his actions in seizing Plaintiff based on his orders were objectively reasonable.

him to detain anyone coming out of any of the three target apartments.  (*Id.* 59:25-60:17.)

Based on the facts in evidence, Defendant Johnson is entitled to qualified immunity regarding the initial seizure of Plaintiff from the apartment because it was objectively reasonable for him to rely on the flawed conclusions of his supervisors.  *Cf. Stearns,* __ F.3d at __, 2010 WL 3191511 at **1-2, 7 (holding that deputy who grabbed plaintiff's hand and pushed him against wall while another officer handcuffed plaintiff was entitled to qualified immunity, even though there was no probable cause to arrest plaintiff, because he merely assisted in arrest at police department's request and, "[w]hile the record does not support a conclusion that Deputy Campbell himself reasonably believed probable cause existed to arrest Mr. Stearns, it in no way undermines his reliance on 'the flawed conclusions of [his] fellow police officers.'") (quoting *Baptiste*, 147 F.3d at 1260); *Duran v. Sirgedas*, 240 Fed. Appx. 104, 114-15 (7th Cir. May 1, 2007) (unpublished opinion) (holding that sergeant was entitled to qualified immunity on unlawful arrest claim where he relied on fellow officer's statement that plaintiff should be arrested and there was no time to reflect or obtain additional information regarding fellow officer's basis for arrest, given chaotic scene and escalating situation between officers and partygoers);  *Deville*, 567 F.3d at 166-67 (holding that arresting officer was entitled to qualified immunity on false arrest claim because fellow witnessing officer communicated reason for plaintiff's stop to arresting officer and there was no evidence that arresting officer had reason to disbelieve fellow officer's account at time of arrest); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1028 (9th Cir. 2002) (holding that line officers, but not supervising officer, were entitled to qualified immunity because officers had different duties during search); *Caldarola v. Calabrese*, 298 F.3d 156, 166-67 (2d Cir. 2002) ("We cannot expect an officer to question the judgment of his superiors, especially when, as here, he has no basis for doing so. . . . We decline to impose on officers a duty to conduct an independent investigation into

the materials provided to them by their superiors."); *Bilida v. McCleod*, 211 F.3d 166, 174 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.* a warrant, probable cause, exigent circumstances)."); *Rogers*, 120 F.3d at 456 (holding that officer who acted in reliance on fellow officer's clear, unambiguous statements concerning the existence of arrest warrant for plaintiff was entitled to qualified immunity, even though no warrant actually existed, because it was objectively reasonable for officer to believe that probable cause existed for arrest).

  **2.**  **The Court's jury instructions do not require a new trial.**

    **a.**  **The Court did not err in failing to include instructions on the lawfulness of Plaintiff's removal from the apartment.**

  Plaintiff argues that the Court's instructions gave the jury no guidance as to the lawfulness of what happened during his removal from the apartment, leaving the jury to erroneously presume that the seizure was lawful from its inception.  The Court disagrees.  There is nothing in the instructions that would suggest to the jury that the removal of Plaintiff from Apartment 133 was lawful or unlawful.  Instead, the instructions made clear to the jury that its function was to determine whether Plaintiff's Fourth Amendment rights were violated during the time period after Plaintiff was removed from the apartment.  (*See* Court's Jury Instructions (Doc. 81) Nos. 7 & 10.)  The instructions correctly limited the jury to determining the only issues pertinent to the named Defendants.

  Plaintiff asserts that the lack of instructions on his removal created an improper inference that the legal justification for the seizure from the apartment continued for the entire seizure. Plaintiff's argument amounts to pure speculation.  It is equally or more likely that the jury

understood its limited function because the evidence at trial showed that, other than Defendant Johnson, the named Defendants were not involved in Plaintiff's removal from the apartment.  As to Defendant Johnson, he testified that he did not make the decision to remove Plaintiff, he was not aware of all the information behind targeting Apartment 133, and he was merely following directives from his superiors.  Thus, if the jury were to infer anything from the lack of instructions regarding the initial seizure, it is more plausible that they correctly inferred that the named Defendants could not be held liable for that portion of the seizure.

Plaintiff also contends that the Court could have instructed the jury that Plaintiff's removal from the apartment was unlawful but that none of the named Defendants were responsible for that violation.  Plaintiff, however, never requested such an instruction.  The Court thus did not have an opportunity to consider the appropriateness of such an instruction before instructing the jury.  *See* Fed. R. Civ. P. 51(d)(1)(B) (explaining that a party may assign as error a failure to give an instruction if that party properly requested it and objected to it).  In any event, the Court finds that the lack of such an instruction did not insert error into the trial, unduly prejudice Plaintiff, or in any other way affect Plaintiff's substantial rights.

Finally, Plaintiff argues that the Court's limitation of the jury's function to the continued seizure injected error into the jury's determination on the excessive-force claim.  Instruction No. 10 in part instructed the jury: "The use of an unreasonable level of force . . . transforms an investigative seizure into an arrest that must be supported by probable cause."  (Court's Jury Instructions (Doc. 81) No. 10.)  Plaintiff contends that, because the jury was left to infer that Defendants initially made an arrest supported by probable cause, the instruction essentially instructed the jury that Defendants had the authority to use whatever force was needed to effectuate the seizure from that point forward.  The Court disagrees for a number of reasons.  First, as explained, the limitation of the jury's function

21

in the instructions did not allow or encourage the jury to make any improper inferences concerning the initial removal.  Second, the instructions on excessive force correctly instructed the jury to determine whether the force used against Plaintiff during his continued detention was reasonable under the totality of the circumstances.  (*Id.* No. 11.)  The instructions as a whole did not confuse the jury in thinking that Defendant had the authority to use an unreasonable level of force.  The excessive force instructions were not erroneous and did not unduly prejudice Plaintiff, or in any other way improperly affect Plaintiff's substantial rights.

> **b.**     **Instructing the jury on the law of reasonable suspicion does not warrant a new trial.**

Plaintiff argues that the Court's Jury Instruction No. 10 erroneously instructed the jury on the law of investigative detentions and reasonable suspicion, in spite of the fact that the Court ruled in its Memorandum Opinion and Order that Plaintiff's seizure from his apartment was only lawful if the officers had probable cause and exigent circumstances.  Instruction No. 10 was constructed from Defendants' Requested Instructions Nos. 2, 3, 4, 7, 8, 12, and 15 as well as from Plaintiff's Proposed Instruction Nos. 1 and 3.  Plaintiff's Proposed Instruction No. 1 contains the substance of the language in the Court's Jury Instruction No. 10 regarding investigative detentions and reasonable suspicion to which Plaintiff now objects.  (*See* Pl.'s Proposed Jury Instruction (Doc. 69) No. 1 at 4-6 ("If you find that Plaintiff has proved by a preponderance of the evidence he was seized, then you must next decide whether the initial seizure stop was justified by 'reasonable suspicion.'. . . Plaintiff has the burden of proving that each Defendant lacked "reasonable suspicion" for the initial seizure. . . .").)

Despite the fact that the alleged errors in the instruction were requested by Plaintiff in his own proposed instruction, Plaintiff at the end of trial did make a timely objection to instructing the

jury on reasonable suspicion.  (*See* Trial Tr. (Doc. 90) at 234:5-235:24.)  Plaintiff, however, did not

submit an alternative instruction free of the offending language to the Court at that time.  The only

instructions the Court had from Plaintiff included language on reasonable suspicion.  Despite the

fact that Plaintiff invited the alleged errors, the Court nonetheless finds that Plaintiff sufficiently

objected to Instruction No. 10 and will consider the merits of his argument.

      To receive a new trial based on an erroneous jury instruction, the moving party must show

that (1) the instructions did not adequately state the law and (2) the error prejudiced the moving

party because the jury was likely confused or misled.  *Susan Wakeen Doll Co., Inc. v. Ashton Drake*

*Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).  Failure to properly instruct the jury thus only requires

a new trial if the jury might have based its verdict on the erroneous instruction.  *Henning*, 530 F.3d

at 1221 (quoting *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002)).

In determining whether the jury was properly instructed on the applicable law, a court should review

the instructions in their entirety to determine if the jury was misled in any way.  *See Medlock v.*

*Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir. 1999).  The instructions as a whole need not be

flawless, but the court must be satisfied that, upon hearing the instructions, the jury understood the

issues to be resolved and its duty to resolve them.  *Id.*

      In this case, the instructions given to the jury were a correct statement of Fourth Amendment

law.  However, in the circumstances of this case, where Plaintiff was removed from his apartment

involuntarily, the applicable standard to analyze the lawfulness of Plaintiff's continued seizure in

cuffs was probable cause.  *See United States v. Reeves*, 524 F.3d 1161, 1165-66 (10th Cir. 2008)

(holding that seizure inside home without warrant required probable cause and exigent

circumstances to be lawful).  Consequently, the jury need not have been instructed on the law

regarding reasonable suspicion and investigative detentions.  Nevertheless, the Court finds that the

claimed error did not prejudice Plaintiff and does not amount to manifest injustice because, based on the facts before the jury, there was no question that the named Defendants did not have either reasonable suspicion or probable cause to continue to seize Plaintiff.  All the witnesses admitted that, after Plaintiff was taken from the apartment, they recognized him as not being the suspect, Harry.  They had no reason to suspect him of committing any other crime.  Thus, there was no factual dispute before the jury concerning whether the officers had either reasonable suspicion or probable cause to detain him.  (*See* Trial Tr. of Cameron Johnson (Doc. 89) 106:1-4 (stating that he did not know whether Plaintiff was a witness, victim, or suspect of a crime at time he was removed from apartment); Trial Tr. of Jason Morales (Doc. 89) 122:9-12 (admitting there was never any probable cause to believe Plaintiff had committed any crime); Trial Tr. of Elizabeth Thomson (Doc. 90) 151:7-9 (testifying that at no time was Mr. Mazzoni a suspect of any kind); Trial Tr. of Kelly Sinclair (Doc. 90) 189:8-19 (testifying that the officers never thought Plaintiff was the suspect, Harry McCarty); Trial Tr. of Commander Geier (Doc. 90) 217:2-6 (admitting that he had no probable cause to extract Plaintiff or arrest him).  Rather, the questions to be decided by the jury were how long each Defendant knew Plaintiff's seizure continued and whether each Defendant acted reasonably given the totality of the circumstances in responding as each did.

The jury heard evidence that when Plaintiff came out of the apartment, Defendant Johnson cuffed him for safety reasons and immediately took Plaintiff to his supervisors and the detectives at the command post so that Plaintiff could talk to the detectives.  (*See* Trial Tr. (Doc. 89) 64:24-65:1; 65:23-25; 90:15-19; 91:17-92:1.)  At the command post, after Detective Morales finished speaking with Commander Geier about all the information obtained during the preliminary investigation, Detective Morales immediately went over to speak with Omar Kulp and Plaintiff to figure out what their involvement was, if any.  (*See id.* 67:9-13; 114:14-115:12; 126:14-25.)

Detective Morales spoke to Mr. Kulp and Plaintiff for approximately 15 minutes.  (*Id.* 116:12-15.)
Mr. Kulp and Plaintiff had information concerning the suspect Harry that was related to the
shooting, which they conveyed to Detective Morales.  (*See id.* 127:1-23.) After speaking with Mr.
Kulp and Plaintiff, Detective Morales went and told Commander Geier that there was no reason to
detain Mr. Mazzoni, whereby Commander Geier told a field officer to release him.  (*See id.* 117:7-
11; 128:3-11; Trial Tr. (Doc. 90) 220:16-221:18.)  The field officer responded that he did not have
the tool to cut off the flex cuffs, so another SWAT officer had to be called.  (*See id.* 221:19-24.)
Defendant Johnson testified that he released Plaintiff from the flex cuffs within approximately 15
minutes after first cuffing Plaintiff.  (*See id.* 66:21-67:3.)  Based on the verdict and the evidence at
trial, the jury necessarily believed Defendants' version of events and found their time frame and
actions to be reasonable.  Defendants did not raise any factual issue regarding whether they had
reasonable suspicion versus probable cause to detain Plaintiff.  Defense counsel never argued in
closing that there was reasonable suspicion or probable cause to support the continued detention.
Rather, the focus of the argument was the length of the detention and whether each officer acted
reasonably with regard to Plaintiff's continued seizure.  Accordingly, the erroneous portion of
Instruction No. 10 did not affect the outcome of the trial or affect Plaintiff's substantial rights.
Because the error was harmless, Plaintiff is not entitled to a new trial.  *See* Fed. R. Civ. P. 61
(directing that harmless errors by court must be disregarded and do not provide grounds for granting
a new trial, setting aside a verdict, or disturbing a judgment).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, to Alter or Amend the Judgment and for a New Trial (**Doc. 87**) is **DENIED**.

SENIOR UNITED STATES DISTRICT JUDGE